CASANUEVA,’Judge,
Concurring.
Unlike most cases this court, reviews in which a person has lost their liberty, the primary factual record before us is the trial court’s order. In its .order, the trial court found Mr. Pole in direct criminal contempt based oh Mr. Pole’s behavior in court, the testimony of Mr. Pole, the results of the alcohol test, arid the testimony of Mr. Grimm at the contempt proceeding. As noted- in the respective opinions of Judges LaRose and Lucas, the sequence of events impacts the analytical outcome of whether- the trial court punished ■ for a direct criminal contempt or an indirect criminal contempt. Here, the trial court’s order fails to identify the order in which most of the events occurred. Assuming the alcohol test was performed before the criminal contempt hearing, the proceeding involved indirect, not direct, -criminal contempt.
In my view, the burden of providing a record in instances such as this rests'with the trial court. It is the trial court which seeks to exercise its authority to punish by depriving the alleged offender of his liberty. Accordingly, I join in the section of Judge LaRose’s opinion regarding the need for an adequate record in contempt proceedings. Further, as Judge- LaRose noted in his opinion, where there are any doubts .as to whether a contempt proceeding involves direct or indirect criminal contempt, the category in which the proceeding falls should be resolved in favor of the contemnor. Consequently, the record in this case should be interpreted to indicate that the alcohol test was performed before the trial court conducted the contempt hearing. Accordingly, I join Judge La-Rose’s opinion to reverse the conviction for direct criminal contempt and to vacate the *968 order.[1]
Although in this instance I did not join Judge Lucas’s opinion, I do agree with a primary conclusion he reached when addressing the “assumption that the Florida Rules of Criminal Procedure hold their own innate, organic power to require the appointment of counsel in a summary contempt proceeding.” In this context, I agree fully with his analysis that “[a] rule of procedure cannot create a substantive right that would not otherwise exist.”
A right to counsel must originate from either the national or state constitution or by federal or state legislation. In the first instance, the right is provided by voters and their ratification of the constitutional provision in question; in the legislative arena, the right flows from the representatives of the citizens. To afford the judicial branch with the power — through the passage of rules of procedure — to grant such rights appears to me to be contrary to the separation of powers delineated by the constitution.

. Although it is not necessary to determine if a right to counsel exists in this instance because it is not essential to the resolution of the case, in examining that issue, it appears that the cases of In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948), and Commonwealth v. Moody, 125 A.3d 1 (Pa.2015), would provide a good starting point for such analysis.